NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| Theresa PORTER,<br><br>            Plaintiff,<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Civil No. 18-03744 (RBK)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter is before the Court Plaintiff Theresa Porter's appeal from the Commissioner's final decision denying her application for social security disability benefits. (Doc. No. 1.) For the reasons below, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

At the time of her hearing in 2013, Plaintiff was 41 years old and had worked various jobs, including as a bank teller, housekeeper/cleaner, cashier, and pharmacy technician. (R. at 44–46, 917.) Plaintiff is 5'9'' tall and weighs about 240 pounds. (R. at 48.) Plaintiff has a history of back issues, which worsened while moving her son's bed. (R. at 912.) Plaintiff ultimately had unsuccessful back surgery. (R. at 44–45.)

### A. Procedural History

This is Plaintiff's second time appealing to this Court regarding her disability claim. In her first appeal, Plaintiff successfully challenged the ALJ's January 2013 opinion, which denied Plaintiff's application for benefits beginning on October 1, 2007 due to degenerative and discogenic back disorders and affective/mood disorders. (R. at 17–38.) On appeal, the Court

1

accepted Plaintiff's argument that the ALJ improperly weighed the opinions of her treating physician, Dr. Glass. *See Porter v. Colvin*, No. 14-cv-4004, 2015 WL 1969086, at *12 (D.N.J. Apr. 30, 2015).

The ALJ's first decision briefly discussed Dr. Glass's opinions. In that decision, the ALJ noted that Dr. Glass opined that Plaintiff was to remain out of work and could lift and carry less than 10 pounds, could sit for less than two hours, and stand/walk for less than two hours in an eight-hour work day. (R. at 29.) The ALJ also noted that Dr. Glass found that Plaintiff had 5/5 muscle power, negative straight-leg raising, no antalgic gait, and no sensory or focal motor defects. (R. at 26–27.) But as the Court would eventually point out, the ALJ misstated that Dr. Glass found no tenderness in Plaintiff's lumbar spine. (R. at 26–27.) The ALJ also failed to discuss other aspects of Dr. Glass's opinion that could potentially support Plaintiff's disability claim. (R. at 26–27.)

Ultimately, the ALJ assigned little weight to Dr. Glass's opinions because he found them inconsistent with the objective medical evidence and the record. (R. at 29.) Specifically, the ALJ found that Dr. Glass's opinion was inconsistent with his own treatment notes, diagnostic imaging tests that showed no evidence of spinal stenosis, and evaluation notes from three other doctors, including Dr. Strenger, whose treatment notes reported that Plaintiff had 5/5 motor strength in all extremities, normal range of motion with lumbar forward flexion, negative straight-leg raise bilaterally, and no sensory deficits. (R. at 29.)

Considering Plaintiff's arguments on appeal, this Court remanded. *See Porter*, 2015 WL 1969086, at *13. This Court found that the ALJ failed to recognize Dr. Glass as plaintiff's treating physician and that the ALJ's limited discussion of Dr. Glass disregarded some of his determinations without adequate explanation. *Id.* The Court pointed out that despite the ALJ's

contrary observation, Dr. Glass did find lower lumbar point tenderness on two dates. *Id.* The Court also noted that the ALJ "did not comment on the consistency of Dr. Glass's opinion with that of Dr. Patharkar," another doctor who treated Plaintiff's back pain. *Id.* Accordingly, the Court asked the ALJ to conduct further review to determine if Dr. Glass's opinions "were actually inconsistent with the record." *Id.* at *14.

Thereafter, the ALJ once again denied Plaintiff's application for benefits in a decision dated December 8, 2016. (R. at 902–918.) As before, the ALJ assigned little weight to Dr. Glass's opinion and provided new discussion of Dr. Patharkar, which the Court addresses below. (R. at 915–916.) Plaintiff now appeals from that decision, again claiming that the ALJ erred in weighing Dr. Glass's opinion and that he also failed to correct the errors this Court identified in its prior Opinion. (Doc. No. 10 ("Pl.'s Br.") at 11–28.)

### B. Factual Background and ALJ's Subsequent Decision

Because the Court's prior Opinion set forth the relevant background evidence at length, the Court need not repeat it here. *See generally Porter*, 2015 WL 1969086. Instead, the Court focuses on the ALJ's subsequent decision in light of Plaintiff's arguments and this Court's prior Opinion.

In his second decision denying benefits, the ALJ applied the five-step framework for determining whether an individual is "disabled" under the Social Security Act. (R. at 902–919.) After concluding that Plaintiff met the Act's insured status requirements on September 30, 2011, the ALJ proceed to step one. (R. at 908.) At step one, the ALJ found that Plaintiff engaged in no substantial gainful activity between her alleged onset date of October 1, 2007 and her date last insured of September 30, 2011. (R. at 908). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, lumbar discogenic syndrome, status post lumbar fusion, and obesity. (R. at 908.) At step three, however, the ALJ concluded

that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the Commissioner's listed impairments. (R. at 910–911.)

The ALJ then discussed Plaintiff's residual functional capacity ("RFC") and the severity of Plaintiff's symptoms based on a "thorough review of all the evidence." (R. at 917.) In doing so, the ALJ discussed the opinions of several doctors, including Drs. Glass and Patharkar, and the State Agency physicians, Drs. McLamon, Golish, Udomsaph and Park. (R. at 911–917.)

Each of these doctors opined differently on Plaintiff's work limitations. Of the State Agency physicians, Drs. McLamon and Golish opined that Plaintiff could perform light work, whereas Drs. Udomsaph and Park opined that Plaintiff could perform sedentary work, but could stand/walk for only four hours and perform only occasional postural activities. (R. at 915–916.) Dr. Glass offered two opinions. First, on October 17, 2008, Dr. Glass opined that Plaintiff could not work until December 11, 2008. (R. at 914–915.) Second, Dr. Glass opined that Plaintiff could rarely lift and carry less than 10 pounds, could sit for less than two hours, could stand/walk for less than two hours in an eight-hour workday, and could rarely stoop, crouch, squat, and climb stairs, but never twist or climb ladders. (R. at 915.) In an April 2013 opinion, Dr. Patharkar opined that Plaintiff could perform only light duty work, except Dr. Patharkar believed that Plaintiff could only sit, stand, and walk for one hour at a time, could not perform postural limitations, required environmental limitations, and could reach above the shoulder only occasionally. (R. at 916.)

The ALJ discussed Dr. Glass at length. The ALJ noted, for example, that after Plaintiff hurt her back and experienced severe pain radiating down both legs, she saw Dr. Glass for a neurosurgical consultation. (R. at 912–913.) The ALJ noted that Plaintiff reported left posterior radicular pain to her foot and toes to Dr. Glass, whose examination showed decreased range of motion in her thoracolumbosacral spine with left paramedian lower lumbar and lumbosacral point

4

tenderness and paravertebral muscular spasm. (R. at 913.) Accordingly, the ALJ noted that Dr. Glass referred Plaintiff to physical therapy, though she later reported that therapy provided no long-term relief. (R. at 913.) The ALJ further noted that in a visit 10 days after Plaintiff had a decompressive laminectomy and posterior lumbar interbody fusion at L4-L5, Dr. Glass's neurological testing showed 5/5 power throughout and a sensory exam showed no dermatomal deficit. (R. at 913.) As the ALJ stated, Plaintiff then reported to Dr. Glass a slow improvement in both her lower back and radicular pain. (R. at 913.)

The ALJ discussed other aspects of Dr. Glass's notes as well. Although Plaintiff reported improvement to him, she suffered a setback with her back pain following a car accident. (R. at 913.) Dr. Glass's X-rays, however, showed satisfactory prosthetic position, instrumentation position, and spinal alignment. (R. at 913.) And by July 2008, Dr. Glass indicated that Plaintiff's back pain returned to its baseline and Plaintiff experienced only episodic left radicular pain. (R. at 913.) With continued treatment from Dr. Glass, the ALJ explained, Plaintiff achieved around 70-degree flexion in her lumbar spine and had negative straight-leg raising. (R. at 914.) As the ALJ noted, Dr. Glass's neurological testing also showed no focal motor or sensory deficits, as well as a non-antalgic gait. (R. at 914.)

Ultimately, the ALJ assigned little weight to Dr. Glass's opinion that Plaintiff could rarely lift and carry less than 10 pounds, could sit for less than two hours, could stand/walk for less than two hours in an eight-hour workday, and could rarely stoop, crouch, squat, and climb stairs, but never twist or climb ladders. (R. at 915.) The ALJ reasoned that Dr. Glass's opinions about Plaintiff's limitations were inconsistent with other substantial evidence in the record, including medically acceptable clinical and laboratory techniques and his own treatment notes, which, in addition to the findings noted above, detailed routine follow-up appointments. (R. at 915.) The

ALJ also reasoned that Dr. Glass's opinions were inconsistent with Dr. Strenger's treatment notes, which reported that Plaintiff had 5/5 motor strength in all extremities, normal range of motion with lumbar forward flexion, negative straight-leg raise bilaterally and no sensory deficits. (R. at 915.) The ALJ stated that although Dr. Glass was one of Plaintiff's treating physicians, his treatment was routine and conservative and consisted mainly of follow-ups to determine her future course of treatment. (R. at 915.)

The ALJ also rejected the other portion of Dr. Glass's opinion that Plaintiff could not work until December 11, 2008. (R. at 915.) The ALJ assigned this opinion little weight because it went to the ultimate issue of disability, and that issue is reserved for the ALJ. (R. at 915.) The opinions of others, the ALJ reasoned, were not entitled to controlling or special significance. (R. at 915.)

The ALJ then assigned little weight to Dr. Patharkar's April 2013 opinion, which limited Plaintiff to performing only light duty work, except Dr. Patharkar believed that Plaintiff could only sit, stand, and walk for one hour at a time, could not perform postural limitations, required environmental limitations, and could reach above the shoulder only occasionally. (R. at 916.) The ALJ assigned little weight to Dr. Patharkar's opinion because it was rendered more than a year after Plaintiff's date last insured and did not indicate that it related back to the period at issue. (R. at 916.) The ALJ also noted that Dr. Patharkar did not begin treating Plaintiff until May 2011—just months before Plaintiff's insured status expired—at which time she reported her pain as a 3-4 out of 10. (R. at 916.)

The ALJ assigned different weight to the State Agency physicians. The ALJ assigned "some weight" to the opinions of Drs. McLamon and Golish, who opined that Plaintiff could perform light work. (R. at 915–916.) But given the evidence of Plaintiff's chronic low back pain with radiation, the ALJ found that Plaintiff was "slightly more limited" than these doctors

6

suggested. (R. at 915–916.) For the same reason, the ALJ assigned "some weight" to Drs. Udomsaph and Park, who opined that Plaintiff could perform sedentary work, but could stand/walk for four hours and was limited to occasional postural activities. (R. at 916.)

Ultimately, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with limitations. (R. at 911.) Those limitations restricted Plaintiff to occasional pushing and pulling with her left lower extremity; occasional climbing on ramps and stairs, but never ropes, ladders, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and avoiding concentrated exposure to extreme cold, wetness, humidity, vibration, unprotected heights, and moving machinery. (R. at 911.) The ALJ also restricted Plaintiff to routine and repetitive tasks. (R. at 912.)

Having calculated Plaintiff's RFC, the ALJ proceeded to the fourth and fifth steps of the evaluation process. Although the ALJ concluded that Plaintiff could not perform her past relevant work, he found that she could perform other work at her RFC. (R. at 917–918.) Thus, the ALJ found that Plaintiff was not disabled during the relevant time period. (R. at 918–919.)

## II. LEGAL STANDARD

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. §405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See*, *e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the

7

Commissioner's decision if it is supported by substantial evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See, Schonewolf v. Callahan*, 927 F.Supp. 277, 284-85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds. First, Plaintiff claims that the ALJ erred by assigning little weight to Dr. Patharkar's medical opinion. (Pl.'s Br. at 22–26.) Second, Plaintiff claims that the ALJ erred by assigning little weight Dr. Glass's medical opinion. (*Id.* at 11–22.) Third, Plaintiff claims that the ALJ erred in assigning more weight to the medical opinions of the non-treating and non-examining State Agency physicians than Drs. Glass and Patharkar. (*Id.* at 26–27). None of these grounds support a remand here.

### A. Substantial Evidence Supports the ALJ's Treatment of Dr. Patharkar

Plaintiff wrongly claims that the ALJ erred in assigning little weight to Dr. Patharkar's April 2013 opinion, which, according to Plaintiff, shows that her lower back symptoms prevent

8

her from performing sedentary work. (Pl.'s Br. at 22.) The ALJ gave Dr. Patharkar's opinion little weight because it "was rendered more than a year after [Plaintiff's] date last insured and [it] does not indicate that it relates back" to the disability evaluation period. (R. at 916.) Indeed, Plaintiff must establish disability as of her date last insured. *See Fleischman v. Comm'r of Soc. Sec.*, No 12-cv-4869, 2014 WL 809006, at *4 (D.N.J. Feb. 28, 2014).

Despite Plaintiff's arguments to the contrary, the late and unclear nature of Dr. Patharkar's opinion provides substantial evidence for rejecting it. *See Alston v. Astrue*, No. 10-cv-839, 2011 WL 4737605, at *3 (W.D. Pa. Oct. 5, 2011) ("[M]edical evidence generated after the date last insured is only relevant to the extent it is reasonably proximate in time or relates back to the period at issue."); *see also Weimer v. Astrue*, No. 11-cv-434, 2013 WL 23856, at *1 n.1 (W.D. Pa. Jan. 2, 2013) (same). Because the ALJ did not err by assigning little weight to Dr. Patharkar's opinion on this basis, the ALJ did not need to discuss the consistency of his opinion with Dr. Glass's, despite language to that effect in this Court's prior Opinion. S*ee Beety–Monticelli v. Comm'r Soc. Sec.*, 343 F. App'x 743, 746 (3d Cir. 2009) (holding that the ALJ reasonably concluded that a physician's opinion "lacked probative value" because it "shed no light" on the claimant's condition prior to the expiration of the claimant's insured status).

## B. Substantial Evidence Supports the ALJ's Treatment of Dr. Glass

The Court also rejects Plaintiff's claim that the ALJ erred in assigning little weight to Dr. Glass's opinion. As Defendant notes, Plaintiff suggests that the ALJ should have adopted Dr. Glass's opinions on two broad points. (Pl.'s Br. at 11–22.) First, Plaintiff suggests that the ALJ should have credited Dr. Glass's opinion that Plaintiff could not work from October 17, 2007 through at least a twelve-month period thereafter. (*Id.* at 12.) Second, Plaintiff claims that the

ALJ should have adopted Dr. Glass's view that she could not perform sedentary work activities based on his view of her limitations. (*Id.*) The Court disagrees on both scores.

### 1. Dr. Glass's Opinion that Plaintiff Could Not Work

Substantial evidence supports the ALJ's decision to reject Dr. Glass's opinion that Plaintiff could not work from October 17, 2007 for a period of at least twelve months thereafter. (R. at 915.) As the ALJ correctly explained, the disability determination is reserved for the Commissioner, and other opinions on the matter are not entitled to controlling weight or special significance. (R. at 915); *Adorno v. Shalala*, 40 F.3d 43, 47–48 (3d Cir. 1994) ("We recognize, of course, that a statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue."); *Trauterman v. Comm'r of Soc. Sec.*, 296 F. App'x 218, 220 (3d Cir. 2008) (noting that opinions such as "disabled" or "unable to work" are "opinions reserved to the Commissioner").

In any event, Plaintiff has not met her burden to achieve a remand on this basis. A court has "no basis" to remand when a plaintiff "merely asserts that harm was done" but "entirely sidesteps the question" of "*how* [the plaintiff] might have prevailed [if the ALJ] had been more thorough." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (emphasis in original). Yet here, Plaintiff does not squarely argue that the ALJ erred in rejecting Dr. Glass's opinion about her inability to work for the twelve-month period. Instead, she merely mentions it in passing. Absent elaboration, this is not sufficient.

### 2. Dr. Glass's Opinion on Plaintiff's Work Limitations

Substantial evidence also supports the ALJ's decision to assign little weight to Dr. Glass's opinion that Plaintiff could not perform sedentary work. (Pl.'s Br. at 12.) Although generally, an ALJ may give controlling weight to the opinion of a treating source, he may give it less weight if

the opinion is "not consistent with other substantial evidence in the case record." *See Ochmanski v. Comm'r of Soc. Sec.*, No. 18-cv-02784, 2019 WL 981644, at *5 (D.N.J. Feb. 28, 2019) (citing 20 C.F.R. § 404.1527(c)(2)). Indeed, when evidence is inconsistent, "the ALJ retains significant discretion in deciding whom to credit." *Ganges v. Commisioner of Social Sec.*, No. 17-cv-1982, 2018 WL 5342717, at *11 (D.N.J. Oct. 29, 2018) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

Here, the ALJ provided several adequate reasons for assigning little weight to Dr. Glass's opinion. For example, the ALJ reasonably found that Dr. Glass's opinion on the severity of Plaintiff's impairments was not consistent with his own treatment notes. Specifically, the ALJ found that despite Dr. Glass's opinions about Plaintiff's limitations, she had negative straight-leg raising, 5/5 muscle power, no sensory deficits, and received routine and conservative treatment from him. (R. at 915.) The ALJ also noted that Plaintiff received treatments from Dr. Glass mainly during follow-up appointments to determine the course of her treatment. (R. at 915.)

Even assuming that Plaintiff is correct that Dr. Glass's treatment was more than routine and conservative, the ALJ further found that Dr. Glass's opinion was not consistent with other record evidence. (Pl.'s Br. at 15.) Specifically, the ALJ found that Dr. Glass's opinion was not consistent with the opinion of Dr. Strenger, whose treatment notes showed that Plaintiff had 5/5 motor strength in all extremities, normal range of motion with lumbar forward flexion, negative straight-leg raise bilaterally, and no sensory deficits. (R. at 915.)[1] Further still, the ALJ reasoned

---

[1] Plaintiff does not contradict the ALJ's findings regarding Dr. Strenger or clearly assign error to them. (Pl.'s Br. at 11–23.)

11

that Dr. Glass's opinion was not consistent with diagnostic imaging testing that showed no spinal stenosis, recurring herniations, or significant postoperative findings. (R. at 915.)[2]

Invoking language from this Court's previous Opinion, Plaintiff argues that the ALJ was required to discuss other portions of Dr. Glass's opinion. Specifically, Plaintiff contends that the ALJ did not discuss the pertinent evidence that this Court instructed him to consider in its previous Opinion. (*E.g.*, Pl.'s Br. at 18.)

But the ALJ's second decision did just that. Unlike the ALJ's previous decision, which failed to discuss Dr. Glass's findings that could support Plaintiff's claim (and misstated his findings of lumbar tenderness), the ALJ's subsequent decision discussed and cited Dr. Glass's opinion at length. (R. at 913–915); *see Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (explaining that an ALJ's decision should be "read as a whole" to determine if substantial evidence supports it). It even cited and discussed portions of Dr. Glass's opinion that contain what Plaintiff claims the ALJ ignored: evidence of Plaintiff's restricted range of motion in the spine, lumbar point tenderness, antalgic gait, and radicular pain through the legs (Pl.'s Br. at 18). (*See* R. at 913–915 (citing Exhibit 15F).)

Despite that evidence, the ALJ also observed the inconsistencies described above that suggest that Plaintiff is not as limited as Dr. Glass opined. Although the ALJ's reasoning in this regard is similar to the ALJ's reasoning in his first decision, the Court is persuaded that this time, the ALJ adequately considered all of the pertinent evidence and validly exercised his "significant

---

[2] The Court is not persuaded by Plaintiff's claim that the ALJ erred by relying on these facts about diagnostic imaging rather than what Plaintiff calls "overwhelming" contrary evidence. (Pl.'s Br. at 19–21.) The contrary evidence that Plaintiff cites comes, in part, from Dr. Pathakar's findings, which the ALJ correctly rejected for the reasons above. (Pl.'s Br. at 19–21.) And the Court will not reweigh the remaining evidence that Plaintiff cites, for that is not proper. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").

discretion" in choosing whom to credit. *Ganges*, 2018 WL 5342717, at *11 (citing *Plummer*, 186 F.3d at 429). Indeed, an ALJ need not discuss every relevant treatment note in the voluminous record so long as the ALJ adequately considers the record evidence. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Contrary to Plaintiff's contentions, that occurred here, and no more was required. (Def.'s Br. at 19–20.) Put simply, the Court declines Plaintiff's invitation to "convert judicial review of agency action into a ping-pong game' in search of the perfect decision." *DiMeo v. Comm'r of Soc. Sec.*, No. 17-cv-763, 2018 WL 1469043, at *7 (D.N.J. Mar. 26, 2018) (citing *Coy v. Astrue*, No. 08-cv-1372, 2009 WL 2043491, at *14 (W.D. Pa. July 8, 2009)).

### C. Substantial Evidence Supports the ALJ's Treatment of the State Physicians

Finally, Plaintiff contends that the ALJ erred in assigning the State Agency physicians' opinions "greater weight" than the opinions of Drs. Glass and Patharkar. (Pl.'s Br. at 26–27.) Plaintiff's argument is twofold. First, Plaintiff claims that the State Agency physicians' opinions cannot be assigned "greater weight" than Plaintiff's two treating doctors because the State Agency physicians "did not have the opportunity to review significant probative medical evidence" before rendering their opinions, and the treating physicians have reasonable knowledge of Plaintiff's impairments under the regulations. (*Id.*) Second, Plaintiff claims that the State Agency physicians' opinions cannot be assigned "greater weight" than Drs. Glass and Patharkar because the State Agency physicians' opinions are outweighed by the evidence of the treating physicians. (*Id.*)

The Court finds that the ALJ made a proper choice in deciding whom to credit. "Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the

wrong reason." *Coleman v. Comm'r of Soc. Sec.*, 494 F. App'x 252, 254 (3d Cir. 2012) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).

Here, the ALJ assigned "some weight" to the opinions of Drs. McLamon and Golish, who opined that Plaintiff could perform light work, but given the evidence of chronic low back pain with radiation, the ALJ found that Plaintiff was "slightly more limited" than they suggested. (R. at 915–916.) For the same reason, ALJ assigned "some weight" to Drs. Udomsaph and Park, who opined that Plaintiff could perform sedentary work, but could stand/walk for four hours and was limited to occasional postural activities. (R. at 916.) As noted above, Drs. Glass and Patharkar opined that Plaintiff's limitations were even more restrictive.

Reading the ALJ's discussion of the State Agency physicians together with the ALJ's discussion of Drs. Glass and Patharkar, it is apparent that the ALJ believed that the opinions of the State Agency physicians conflicted with the opinions of Drs. Glass and Patharkar, and that the State Agency physicians' opinions were not only more consistent with the record, but also more internally consistent. Thus, the ALJ reasonably credited their opinions over the opinions of Drs. Glass and Patharkar, whose opinions the ALJ had acceptable reasons to reject.

Additional law supports this decision: a treating physician's opinion "does not bind the ALJ" on the RFC issue, *see Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011), and opinions of State Agency physicians merit "significant consideration." *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d at 361. Despite Plaintiff's contentions, the Court discerns no error in the ALJ's analysis.

## IV. CONCLUSION

For the foregoing reasons, the ALJ's decision denying benefits is **AFFIRMED**. An appropriate Order shall issue.

Dated: 6/25/2019                                                                /s/ Robert B. Kugler
                                                                                          ROBERT B. KUGLER
                                                                                          United States District Judge